## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| TERRENCE J. WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | NO. 1:09-CV-00151-WSD |
| | ) | |
| THURBERT E. BAKER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER TO PREVENT THE REMOVAL OF TERRENCE J. WHITE FROM HIS HOME AND EMPLOYMENT

Plaintiff Terrence J. White ("White") files this memorandum of law in support of his Motion for Temporary Restraining Order and respectfully requests that the Court maintain the *status quo* and temporarily enjoin the State and the Sheriff of Clayton County, including any of his agents, employees or officers (collectively, the "Sheriff"), from ordering Plaintiff to move out of his residence, leave his job and become homeless.

Although he has lived in the same residence for six (6) months without any complaint by the Sheriff, White has recently been informed by the Sheriff that a church formerly thought to be vacant may be occupied by a small congregation and may be located within 1,000 feet of his home and employment. Although White is

438753.1

legally permitted to attend, enter or volunteer at this church, he is prohibited from residing or working within 1,000 feet it.  This absurd contradiction in the law, if enforced by the Sheriff with regard to a church that is so inactive that it was believed to be vacant, means that White faces the possibility of committing a felony if the Sheriff is correct that his home is within 1,000 feet of a place he is legally permitted to enter.

White has standing to bring this challenge because he has been threatened with imminent prosecution.  White will likely succeed on the merits of his constitutional challenge to a residency requirement that prohibits him from living within 1,000 feet of a place he is legally permitted to enter.  In addition, White will be irreparably harmed in the absence of a temporary restraining order because he will become homeless.  The risk that the Sheriff will suffer harm is low, and certainly lower than the harm that White faces (imminent loss of housing and becoming homeless or potential commission of a felony).  Finally, the public interest supports maintaining the *status quo* and temporarily restraining an unconstitutional law which results in White being able to visit and volunteer with, but not live or work near, a church.  Accordingly, White respectfully requests that the Court issue an Order temporarily restraining the Sheriff from enforcing the residency and employment restrictions against White as they pertain to the First

438753.1

Christian Church at Forest Park.[1]  A Proposed Order is attached as Exhibit A for the Court's convenience.

## STATEMENT OF FACTS

As a registered sex offender, White is required to abide by the residency and employment restrictions set forth in O.C.G.A. § 42-1-15(b) and (c).  Among other places, White is prohibited from living within 1,000 feet of a church.  *See* O.C.G.A. § 42-1-15(b).  In addition, Georgia law as currently written prohibited White from being "employed by or volunteer[ing] at any … church or at any business or entity that is located within 1,000 feet of a … church."  O.C.G.A. § 42-1-15(c)(1).  However, a portion of O.C.G.A. §42-1-15(c)(1) is currently not being enforced.  In a related case, Judge Cooper of this Court granted an injunction preventing the enforcement of O.C.G.A. §42-1-15(c)(1) with regard to the restrictions on volunteering at a church.  *See* Ex. B, *Whitaker v. Perdue*, No. 4:06-cv-0140-cc (N.D. Ga. Mar. 30, 2009) at 31 ("the Court **GRANTS** the motion for preliminary injunction.  All Defendants in this action are hereby **RESTRAINED AND ENJOINED** from enforcing O.C.G.A. § 42-1-15(c)(1) to the extent that it restricts registered sex offenders from engaging in volunteer activities at

---

[1] Mr. White is **not** seeking a restraining order as to O.C.G.A. § 42-1-15's residency and employment restrictions in general.  Instead, he only seeks that the Defendants be enforced from enforcing this statute as it pertains to the one church at issue.

churches."). Judge Cooper found that the prohibition on volunteering with a church violated the Due Process Clause of the Fourteenth Amendment and enjoined enforcement because the plaintiff class "clearly established a substantial likelihood on the merits as to the claim that the Church Volunteer/ Employment Provision's prohibition on volunteering is unconstitutionally vague." *Id*. at 27-28.

As a result, White is permitted to volunteer with any church. And, there is no legal prohibition on White entering a church or attending services. He is simply not able to reside or work within 1,000 feet of a place that he is legally permitted to enter and serve.

After searching for two years, White recently obtained employment. Declaration of Terrence White ("White Decl.") ¶ 5, attached hereto as Ex. C. When White was searching for a job, he was aware that Georgia law prohibits him from working within 1,000 feet of a church. White accepted his new job, believing that he was in compliance with the law. *Id.*

On April 16, 2009, White went to the Clayton County Sheriff's Office to update his registration information to reflect his new job, as is required by Georgia law. While there, two officers informed White that he would "very soon" receive official notification that he would have to move from his current residence because the officers believed he may reside within 1,000 feet of the First Christian Church

Case 1:09-cv-00151-WSD   Document 20-1   Filed 04/22/09   Page 5 of 21

at Forest Park. *Id.* ¶¶ 6-7. The officers explained that they previously believed that the church was vacant but recently learned that worship services may be occurring at the church. *Id.* ¶ 8. Before April 16, 2009, the Sheriff knew where White was residing and had not raised an issue about the location of his residence. *Id.* ¶ 4.[2]

If this Court does not enter a temporary restraining order, White will be forced to leave his current residence and quit his job. *Id*. ¶ 12. If he is forced to leave his current apartment, White believes he will become homeless. *Id*. ¶ 9. Additionally, if the Court does not enter a temporary restraining order, he will be forced to quit his job. Given that it took White two years to find this job, he believes he will not be able to find another job if he cannot keep this job. *Id*. ¶ 10. Additionally, without this job, White will be forced into homelessness. *Id*. ¶ 11. While family members have paid White's rent in the past, they can no longer afford to do so, meaning this job is the only way White can keep a roof over his head. *Id*.

---

[2] Perhaps coincidentally, the issue with White's residence being too close to a church only arose after he filed this lawsuit and informed the Sheriff of the restraining order in place in this case. *See* Letter from Nicole Iannarone to Sheriff Kemuel A. Kimbrough March 6, 2009, attached hereto as Ex. D.

438753.1

5

On January 21, 2009, White filed a complaint in this case to enjoin the enforcement of O.C.G.A. § 42-1-12 to the extent that it requires sex offenders to disclose their e-mail addresses, user names, and passwords when registering. The Court granted a temporary restraining order enjoining defendants from requiring White to disclose his e-mail addresses, user names, and passwords as part of his required registration information. The temporary restraining order was extended during the pendency of the last session of the Georgia General Assembly due to the consideration of several bills which might amend the law at issue in this matter. Order Extending Temporary Restraining Order, filed March 3, 2009. Upon the conclusion of the session, plaintiff's counsel proposed, and the Court adopted, a schedule outlining the dates for submission of an amended complaint and motion for preliminary and permanent injunction. Dkt. No. 19, Scheduling Order, filed April 8, 2009. In addition, the scheduling order made clear that the temporary restraining order will remain in place until the Court hears and rules upon White's motion for preliminary and permanent injunctive relief. *Id*. Plaintiff's amended complaint is currently due on May 4, 2009, and, in addition to other changes, plaintiff will submit an amendment at that time containing a challenge to the residency and employment provisions to the extent they prohibit White from living

438753.1

within 1,000 feet of a place is permitted to enter and volunteer with.[3]  *Id.*  Shortly

thereafter, on May 18, 2009, Plaintiffs will file their motion for preliminary and

permanent injunction.  *Id.*

Given that the Court will soon be hearing the merits of White's claims,

White respectfully requests the Court enjoin the Defendants from enforcing the

residency and employment restrictions of O.C.G.A. §42-1-15(b) and (c)(1) as they

pertain to First Christian Church at Forest Park until the Court holds a hearing on

the merits of White's claims for injunctive relief.

## ARGUMENT AND CITATION OF AUTHORITY

To obtain a temporary restraining order, White must demonstrate (1) a

substantial likelihood of success on the merits; (2) irreparable harm in the absence

of an injunction; (3) the harm suffered by White in the absence of an injunction

would exceed the harm suffered by the Sheriff if the injunction issues; and (4) an

injunction would not disserve the public interest.  *See Johnson & Johnson Vision

Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002).

Because all four of the above requirements are met, a temporary restraining order

is appropriate.

---

[3] In the event the Court would prefer an interim amendment to add the challenge
contained herein to the current complaint, plaintiff would be pleased to provide
that amendment prior to submitting the final amended complaint on May 4, 2009.

### A.      White Has Standing to Challenge the Residency and Employment Restrictions of O.C.G.A. § 42-1-15.

White has standing to challenge the portions of O.C.G.A. § 42-1-15(b) and (c)(1) prohibiting him from residing or working within 1,000 feet of a church.  At the institution of this matter, White did not challenge these residency and employment restrictions because he believed he was compliant.  However, after the Sheriff informed White that would "very soon" receive notice that the Sheriff believes his residence may be too close to a church, he obtained standing to challenge the law.  *See High Ol' Times v. Busbee*, 621 F.2d 135, 139 (5th Cir. 1980) (party had standing because imminent prosecution threatened when "[t]he record clearly shows, and the appellees have openly admitted, that the statute will be enforced against appellants to the fullest extent possible").

### B.      <u>White Will Likely Succeed On The Merits</u>.

White is likely to succeed on the merits of his claims challenging the employment and residency restrictions of O.C.G.A. § 42-1-15(b) and (c)(1).

### 1.      The Residency and Employment Restrictions Violate White's Substantive Due Process Rights.

The residency and employment restrictions that prohibit sex offenders from living or working within 1,000 feet of a church lack violate the Due Process Clause of the Constitution because the restrictions do not bear a rational relationship to

438753.1

8

their purpose.  In *Whitaker v. Perdue*, currently pending before Judge Cooper, the court enjoined the State from enforcing a restriction that prohibited sex offenders from volunteering in a church.[4]  It is absurd that a sex offender could spend all day (or night) volunteering ***inside*** a church, but that it is illegal for these same individuals to reside or work 1,000 feet away from the church.[5]

The rational basis test has two steps.  "The first step in determining whether legislation survives rational-basis scrutiny is identifying a legitimate government purpose-a goal-which the enacting government body *could* have been pursuing." *Joel v. City of Orlando*, 232 F.3d 1353, 1358 (11th Cir. 2000).  Here, the legitimate governmental goal is protecting children from sex offenders.  "The second step of rational-basis scrutiny asks whether a rational basis exists for the enacting

---

[4] Early in the *Whitaker v. Purdue* case, Judge Cooper denied a motion for a temporary restraining order enjoining the residency restriction as applied to churches.  *See Whitaker v. Perdue*, No. 4:06-cv-0140-cc (N.D. Ga. June 27, 2006) attached hereto as Ex. E.  This order was issued early in the case, and there was no explanation as to why the temporary restraining order was denied.  Additionally, there is no evidence that the residency and employment restrictions have been reconsidered in light of the injunction permitting volunteering at or near a church.

[5] Another example of the law's absurdity:  Plaintiff's counsel is assisting White in obtaining placement in a homeless shelter in case this Court does not grant the restraining order.  While counsel located a homeless shelter that may be able to accommodate White, this location would render him in violation of the law because the homeless shelter is inside a church.  In addition, even if the church has no objection to housing White, or if he could volunteer at the church, he may nevertheless be in violation of Georgia law because this particular church is potentially within 1,000 feet of another church.

governmental body to believe that the legislation would further the hypothesized purpose." *Id.* The restriction prohibiting sex offenders from living and working within 1,000 feet of a church even though the sex offender can volunteer in the church is arbitrary and irrational. *See Lewis v. Brown*, 409 F.3d 1271, 1273 (11th Cir. 2005) ("Where an individual's state-created rights are infringed by 'legislative act,' the substantive component of the Due Process Clause generally protects him from arbitrary and irrational action by the government."). There is simply no rational basis for prohibiting White from living or working within 1,000 feet of a place he is legally permitted to enter or volunteer with. Thus, the statute violates White's substantive due process rights.

### 2.    The Employment Restrictions Violate Procedural Due Process.

The employment restrictions of O.C.G.A. § 42-1-15(c)(1) limit where a sex offender can work and infringe upon a constitutionally protected property interest. *See Greene v. McElroy*, 360 U.S. 474, 492 (1959) ("[T]he right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes with the 'liberty' and 'property' concepts of the Fifth Amendment.") White's property interest is violated by Georgia law because all potential employment is closed off to him. *Id.* The employment restriction has prevented White from finding employment in compliance with Georgia law. Only

after actively seeking employment for two years was White able to find a job, and now it appears that he might not be able to retain that employment.

When state action causes a deprivation of a property interest such as employment (like that soon to be suffered by White), the Court must inquire into the adequacy of the procedures accompanying the deprivation. *See Bank of Jackson County v. Cherry*, 980 F.2d 1362, 1365 (11th Cir. 1993). Generally due process requires at least notice and an opportunity to be heard by a neutral-decision marker. *See Goldberg v. Kelly*, 397 U.S. 254, 268 (1970). No such provisions are included in O.C.G.A. § 42-1-15(c)(1). Yet, pre-deprivation notice and hearings are required except in "extraordinary situations." *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993) (internal quotation marks and citation omitted). No such extraordinary situations, like meeting the needs of a national war effort, protecting against the disaster of bank failure, and collecting internal revenue, are present here. *Fuentes v. Shevin*, 407 U.S. 67, 92 (1972). Plaintiff has an important private interest in maintaining his current employment, and the lack of a procedure to be heard before he is deprived of employment violates his constitutional rights.

Even if there was notice and an opportunity to be heard in the Georgia provisions, they nevertheless fail to pass constitutional muster. The Supreme

438753.1

Court requires consideration of the following three factors in determining whether the procedures are constitutionally sufficient:  (1) private interest to be affected by the action; (2) the risk of erroneous deprivation of that interest and the probable value of added procedures; and (3) the government's interest, including the fiscal and administrative burdens of added procedures.  *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The employment restrictions of O.C.G.A. § 42-1-15(c)(1)  profoundly affect private interests.  The prohibition against living in proximity to a church may force White to leave his home and his job.  The restriction has a particularly profound effect because it is unclear how much advance notice, if any, White will be given before being forced to quit his job.  He will then not be able to afford rent, and will be forced into homelessness.

The remaining *Mathews* factors examine the value and burden of added procedures prior to deprivation.  Adding a procedure before stopping someone's employment would be valuable because it would allow for an individualized evaluation about whether these restrictions are necessary.  Currently, the same employment restrictions apply to all individuals who qualify as sex offenders under O.C.G.A. § 42-1-12 regardless of the dangerousness of the crime the sex offender committed or how long ago the offense occurred.  *See* O.C.G.A. §§ 42-1-12, 15.

The burden of adding a pre-enforcement hearing would be minimal.  Law enforcement officers are already tasked with determining whether the place of each sex offender's residency and employment is in compliance with the law.  Adding pre-enforcement review would add only a minimal amount of harm.

Accordingly, White has a likelihood of success on his merits with regard to his claim that he is entitled to a hearing before forced to leave his job based on the employment restrictions.  In its current form, O.C.G.A. § 42-1-15 violates the Due Process Clause.

### 3.    The Residency and Employment Restrictions Are Unconstitutionally Vague.

Additionally, the residency and employment restrictions are not enforceable because they are unconstitutionally vague.  A statute will be voided for vagueness under the Due Process Clause of the Fourteenth Amendment if it (1) "fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits" or (2) "authorize[s] and even encourage[s] arbitrary and discriminatory enforcement."  *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999).

For the purposes of the sex offender registration statutes, a "church" is defined as "place of public religious worship."  O.C.G.A. § 42-1-12(a)(7).  This definition is vague and subject to challenge because it never defines what a "place of public worship" is.  How often must a building be used for public worship to be

438753.1

considered a church?  If a building is no longer used for public worship, is it a church?  What about a building that is used once a year for services?  How many people are required to attend a church before it is considered a "place of public worship?"  What is the difference between a "place of public worship" and a private place of worship?

Here, the First Christian Church of Forest Park was apparently believed to be vacant, and thus, not a "place of public worship" by the Sheriff.  Plaintiff's counsel has attempted to contact the church.  *See* Declaration of Elizabeth G. Eager ("Eager Decl.") ¶ 3, attached hereto as Ex. F.  At least five telephone calls to the church over the course of five days were unanswered.  *Id*.  There was no answering machine or recording device that permitted counsel to leave a message for the church.  *Id*.  Counsel has also conducted a Google search for the church on the Internet and it does not appear that the church has its own website.  *Id*. ¶ 4

Given the lack of specificity in the statute, the public is not on notice about whether this particular church constitutes a "place of public worship."  Indeed, the Sheriff's comments to White regarding the fact that they believed the church to be defunct (White Decl. ¶ 8) suggest that the Sheriff also may not believe that the church constitutes a "place of public worship."  Thus, the statute is unclear and vague because it cannot be determined whether living or working within 1,000 feet

438753.1

of this building is allowed or prohibited.  Given the fact that O.C.G.A. § 42-1-15 proscribes where a person can live or work, the individuals affected by this statute need to be put on notice about when the statute applies and what constitutes a "place of public worship."

White's situation illustrates the problem with the vagueness of the statute. He has been living at his residence for six months when he is informed that he will have to move because worship services may have begun building previously thought to be vacant by the Sheriff, and the Sheriff is investigating whether the building is within 1,000 feet of White's residence.

**C.      White Faces Irreparable Injury in the Absence of a Restraining Order.**

Without a temporary restraining order, White likely will be forced to move out of his home and quit his job.  When White went to the Sheriff's Office on April 16, 2009, he was told that he would be receive official word "very soon" that he may be required to move.  White Decl. ¶ 6.  The risk of being evicted or forced to move causes irreparable injury.  *See Lozano v. City of Hazleton*, 459 F. Supp. 2d 332, 335 (M.D. Pa. 2006) (finding risk of irreparable injury when plaintiff faced risk of eviction from apartment based on law requiring eviction of renters who could not prove legal citizenship or residency).

**D.        There is a Low Risk of Harm to Defendants in Issuing a Temporary Restraining Order.**

The harm facing the Defendants if a temporary restraining order is granted is certainly less than the risk of harm facing White if he is forced to move out of his home and quit his job.  Granting the temporary restraining order would simply maintain the *status quo*.  Since an order would maintain the *status quo*, it is difficult to imagine that such an order would cause Defendants harm.  *See Fernandez-Roque v. Smith*, 671 F.2d 426, 429 (11th Cir. 1982) ("One inherent characteristic of a temporary restraining order is that it has the effect of merely preserving the status quo rather than granting most or all of the substantive relief requested in the complaint.").

Maintaining the *status quo* in this case makes particular sense.  Enjoining the enforcement of these provisions until the Court has an opportunity to hear and rule upon White's motion for preliminary and permanent injunction will cause no harm to the defendants.  The Sheriff is aware of where White currently resides and is employed.  White can currently enter or volunteer at the church at issue.  And, the church at issue was thought by the Sheriff to be vacant as a result of lack of activity there.  While it is difficult (if not impossible) to determine what harm would come to defendants if a temporary injunction issued, the harms that would fall upon White absent an injunction are clear, concrete and irreparable:  he would

438753.1

16

be homeless and unemployed.   This factor clearly weighs in favor of granting a temporary restraining order.

**E.      The Public Interest Supports a Temporary Restraining Order.**

The residency and employment restrictions of O.C.G.A. § 42-1-15(b) and (c)(1) are unconstitutional because they do not meet rational basis review and are unconstitutionally vague.  While the public has an interest in enforcement of the law, the public interest is better served by delaying enforcement of this unconstitutional law until the Court has had the opportunity to consider the constitutional implications.  Indeed, Judge Cooper has found that the public interest is served by enjoining the enforcement of the provision preventing registered sex offenders from volunteering at churches:

> Allowing Plaintiffs to continue to participate in their faith communities will further public safety by providing support, stability, and a grounded sense of right and wrong. Both the Board of Pardons and Paroles and the GDC recognize that encouraging people to be involved with faith-based programs will reduce recidivism. The Board of Pardons and Paroles and GDC started a Faith Based Community Initiative that partners churches with offenders to reduce recidivism. Criminological research identifies social support, stability, and employment as factors that decrease recidivism. See Kruttschnitt, Uggen, & Shelton, Predictors of Desistance Among Sex Offenders, JUSTICE QUARTERLY 17:61-87 (2000) (sex offenders with stable employment and social relationships have lower recidivism rates); COLORADO DEP'T OF PUBLIC SAFETY, REPORT ON SAFETY ISSUES RAISED BY LIVING ARRANGEMENTS FOR AND LOCATION OF SEX OFFENDERS IN THE COMMUNITY 4

438753.1

> (2004) (sex offenders with positive support systems are less likely to re-offend and violate probation). Plaintiffs have also presented evidence from several ministers and others who work with sex offenders who testified about the reformative powers of faith and volunteering in faith communities. A preliminary injunction here is in the public interest.

Ex. B at 30-31.  Similarly here, the public has an interest in permitting registered sex offenders to live nearby locations, like the church at issue here, which can have a positive impact upon White.  The public interest would be served by granting the requested temporary relief.

## CONCLUSION

Plaintiffs respectfully request that the Court enter a temporary restraining order enjoining Defendants from enforcing the residency and employment restrictions of O.C.G.A. § 42-1-15(b) and (c)(1) with respect to the First Christian Church of Forest Park against Plaintiff until the Court holds a hearing and rules on White's motion for preliminary and permanent injunction.

Respectfully submitted, this 22nd day of April, 2009.

/s/ Elizabeth G. Eager
Emmet J. Bondurant
Georgia Bar No. 066900
bondurant@bmelaw.com
Nicole G. Iannarone
Georgia Bar No. 382510
iannarone@bmelaw.com
Elizabeth G. Eager
Georgia Bar No. 644007

438753.1

eager@bmelaw.com

**BONDURANT, MIXSON & ELMORE, LLP**
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia  30309-3417
Telephone:  (404) 881-4100
Facsimile:  (404) 881-4111


**COUNSEL FOR PLAINTIFF**

438753.1

## CERTIFICATION OF COUNSEL

The undersigned pursuant to this Court's Local Rules hereby certifies that this document has been prepared with Times New Roman 14 Point.

Respectfully submitted, this 22nd day of April 2009.

/s/ Elizabeth G. Eager
Elizabeth G. Eager
Georgia Bar No. 644007

438753.1

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically filed this Memorandum of Law in Support of Motion for Temporary Restraining Order to Prevent the Removal of Terrence J. White from his Home and Employment with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

> Joseph Drolet, Esq.
> Paige Boorman, Esq.
> Office of the Attorney General
> 40 Capitol Square
> Atlanta, Georgia  30334
> COUNSEL FOR The State

In addition, a copy of the foregoing was provided via certified mail and facsimile to:

> Sheriff Kemuel A. Kimbrough
> Clayton County Sheriff
> Harold R. Banke Justice Center
> 9157 Tara Boulevard
> Jonesboro, GA  30236
> Facsimile:  (678) 479-5358

This 22nd day of April, 2009.

/s/ Elizabeth G. Eager
Elizabeth G. Eager
Georgia Bar No. 644007

438753.1